**UNITED STATES of America and the Trustees of Columbia University in the City of New York, Plaintiffs,**

v.

**CITY OF NEW YORK, the Health Services Administration of the City of New York and the Board of Health of the City of New York, Defendants.**

No. 77 Civ. 3485.

United States District Court, S. D. New York.

Dec. 26, 1978.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, for plaintiff United States; Nathaniel L. Gerber, Asst. U. S. Atty., New York City, Raymond M. Larizza, Dept. of Justice, Washington, D. C., Stephen F. Eilperin, C. W. Reamer, Nuclear Regulatory Commission, of counsel.

Cahill, Gordon & Reindel, New York City, Volpe, Boskey & Lyons, Washington, D. C., for plaintiff The Trustees of Columbia University in the City of New York; Floyd Abrams, Charles E. Fairfax, III, Bennett Boskey, New York City., of counsel.

Allen G. Schwartz, Corp. Counsel, New York City, for defendants; Joseph F. Bruno, Isaac Klepfish, New York City, of counsel.

## OPINION

WARD, District Judge.

Plaintiffs, the United States of America and the Trustees of Columbia University in the City of New York ("Columbia") move pursuant to Rule 56, Fed.R.Civ.P., for summary judgment declaring that § 175.107(c) of the New York City Health Code ("City ordinance") is unconstitutional insofar as it has been preempted by the Atomic Energy Act of 1954, as amended, 42 U.S.C. §§ 2011 et seq. ("the Act"). They also seek to enjoin defendants, the City of New York ("the City"), the Health Services Administration of the City of New York, and the Board of Health of the City of New York ("the Board") from requiring Columbia to comply with the challenged City ordinance or from attempting to control, regulate or interfere with the operation of Columbia's Triga Mark II Nuclear Reactor ("the Columbia reactor") in any way inconsistent with the Act. Defendants cross-move for summary judgment on the grounds, inter alia, that the City ordinance is not preempted by the Act and is a legitimate and proper exercise of the City's police power. For the reasons hereinafter stated, plaintiffs' motion is granted and defendants' cross-motion is denied.

### The Factual Setting

In 1963, Columbia sought and received from the Atomic Energy Commission[1] a permit to construct a Triga Mark II nuclear reactor at 120th Street and Amsterdam Avenue in New York City. Columbia acted pursuant to the provisions of the Atomic Energy Act, 42 U.S.C. § 2011 et seq., which provides for a two-stage procedure for the licensing of nuclear reactors. Under the Act, applications for construction permits "shall" be granted "if the application is otherwise acceptable to the Commission,"

and licenses to operate the reactors "shall" be issued by the Commission:

upon finding that the facility authorized has been constructed and will operate in conformity with the application as amended and in conformity with the provisions of this chapter and of the rules and regulations of the Commission, and in the absence of any good cause being shown to the Commission why the granting of a license would not be in accordance with the provisions of this chapter

. . . .

42 U.S.C. § 2235.

The permit to build the Triga reactor was issued to Columbia after a full safety review by the Commission's Regulatory Staff and after notice of the opportunity for a public hearing on the matter was published in the Federal Register. No one sought such a hearing and no appeal was taken from the Commission's decision. The research reactor was then constructed in a building on the Columbia campus.

In February of 1967, Columbia applied for a license to operate the reactor. One year later the Commission's Regulatory Staff issued a radiological safety evaluation which concluded that the reactor unit could be operated safely. The Commission thereupon announced its intention to issue the operating license and again published a notice in the Federal Register inviting petitions to intervene from those whose interests might be affected by the issuance of the license. A further notice provided for hearings before the Commission's Atomic Safety and Licensing Board ("ASLB"). At the hearings, conducted in New York City in November, 1969 and July, 1970, testimony was presented by over twenty witnesses and comprised more than 1,500 pages of transcript. While not a party to these proceedings, the City, through its Director of

---

1. The licensing and regulatory functions of the Atomic Energy Commission ("AEC") were transferred to the Nuclear Regulatory Commission ("NRC") by the Energy Reorganization Act of 1974, 42 U.S.C. § 5841(f). The Act also established the Energy Research and Development Administration ("ERDA") with responsibility for the programmatic functions, including

research and development, previously exercised by the AEC. ERDA's functions were transferred to the newly created Department of Energy pursuant to the Department of Energy Organization Act of 1977, 42 U.S.C. §§ 7101 et seq. Hereinafter, the Court will use "the Commission" to refer to both the AEC and its successor agency, the NRC.

the Office of Radiation Control, Department of Health, appeared before the ASLB and submitted a prepared statement which concluded that there was no reason for the City to object to the operation of the Columbia reactor. *See In the Matter of Trustees of Columbia University in the City of New York*, 4 A.E.C. 594, 596–97 (1971). On April 6, 1971, the ASLB entered an initial decision denying Columbia's application for an operating license. *Id.*, 4 A.E.C. at 594.

All of the parties involved filed exceptions to the ASLB's initial decision and proceedings were commenced before the Atomic Safety and Licensing Appeal Board ("the Appeal Board"). In May of 1972, after additional hearings at which twelve technical experts testified, the Appeal Board issued its decision overturning the initial finding of the ASLB and authorizing the issuance of the operating license. *See In the Matter of Trustees of Columbia University in the City of New York*, 4 A.E.C. 849 (1972). On the basis of the entire record, the Appeal Board concluded that "issuance of the operating license will not be inimical to the health and safety of the public." *Id.*, 4 A.E.C. at 869. The Appeal Board's decision to issue an operating license to Columbia was affirmed upon judicial review. *See Morningside Renewal Council, Inc. v. United States Atomic Energy Commission*, 482 F.2d 234 (2d Cir. 1973), *cert. denied*, 417 U.S. 951, 94 S.Ct. 3080, 41 L.Ed.2d 672 (1974).

Columbia made a supplementary review of its own before deciding finally to proceed with the project. When Columbia completed that review, it complied with the conditions which the Appeal Board had specified in its decision and brought the reactor into a proper state of operability. Thereafter, the Commission conducted a final safety review and inspection of the reactor and concluded that it could be operated consonant with the public health and safety. The federal operating license was issued on April 14, 1977.

Meanwhile, on September 23, 1976, the City, through its Board of Health, amended Section 175.107 of the City's Health Code which applies to the use and operation of radiation installations within the City. Prior to amendment, the ordinance provided that radiation installations licensed by the Commission were exempted from the radiation control requirements of article 175 of the Health Code so long as the Department of Health was accorded rights of access and inspection. The section further provided that the purpose of such inspection was "to sample effluents, and to conduct such surveys of levels of radiation and radioactive contamination, as will not substantially interfere with or interrupt for any substantial period of time any activity licensed by or contracted for by the United States Atomic Energy Commission . . . ." Other than this requirement, the City imposed no conditions or restrictions upon the operation of Commission licensed nuclear reactors. Commission licensees were not required to obtain any City certificate, permit, or license prior to commencing such operation.

The September 23, 1976 amendment, effective October 24, 1976, added subsection (c), which provides:

[n]otwithstanding the foregoing provisions of this section, the owner or person in charge of a nuclear reactor or critical fissionable assembly to be operated in the City shall, in addition to obtaining a license therefor from the appropriate federal authorities, not commence operation of such reactor or assembly until he has obtained a Certificate of Health and Safety for Nuclear Reactor Operation issued by the Commissioner or his designated representative. This subsection shall not apply to such reactors or assemblies operated for military, naval, national defense or national security purposes. Nothing herein shall be construed as requiring the disclosure of any defense information or restricted data as defined in the Atomic Energy Act of 1954 and the Energy Reorganization Act of 1974, as amended.

The official explanatory notes, printed with the amendment, stated its purpose:

[s]ubsection (c) was added by resolution adopted on September 23, 1976. Since the results of any emergency or consequential radiation release from nuclear reactors or critical fissionable assemblies in the City, such as Columbia University's Research Reactor, would have to be confronted and handled by this City's governmental resources, including the Police, Fire, Air Resources and Health Departments, this requirement is intended to provide the means for a careful public health review by the Department of the implications of the operation of such reactors or assemblies.

*City Record,* October 24, 1976.

Despite Columbia's receipt of a federal license and compliance with the prerequisite safety conditions provided in the Act and its regulations, the City's Commissioner of Health, acting upon the newly amended ordinance, issued a decision on April 22, 1977 rejecting an application submitted by Columbia for a certificate of Health and Safety for Nuclear Reactor Operation. The decision was based upon the possibility of injury to the health and safety of the public resulting from an accidental release of radiation.

On July 20, 1977, the plaintiffs, seeking declaratory and injunctive relief, joined to file the complaint in the instant action.

### The Parties' Contentions

Plaintiffs assert that the City ordinance attempts to regulate nuclear reactors from the standpoint of radiological health and safety and, as such, is preempted by the Act, as amended. They contend that the regulation of nuclear energy from this standpoint falls within the exclusive regulatory jurisdiction of the Commission. Plaintiffs also argue that even if Congress had not preempted this type of state and local

regulation of nuclear reactors, the City ordinance impedes the accomplishment and execution of the purposes and objectives envisioned in the Act and, therefore must fall.

Defendants contend that the City ordinance is a "siting" regulation beyond the responsibility or expertise of the Commission and that Congress did not intend to preempt states and localities from regulating such matters through their police power. They also argue that the City ordinance is a regulation of non-radiological hazards and that the Act expressly permits this type of local regulation.

### Discussion

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337 and 1345. This action arises under the Atomic Energy Act of 1954, as amended, 42 U.S.C. §§ 2011, *et seq.,* and the Supremacy Clause of the Constitution of the United States.

Both parties have submitted statements pursuant to Rule 9(g) of the General Rules of this Court. Having considered these statements and the parties' affidavits, the Court concludes that there are no genuine issues of material fact[2] and that an adequate factual record is presented for a determination of the legal issues before the Court.

The preemption doctrine is founded in article VI, clause 2, of the United States Constitution, the "Supremacy Clause," which provides in pertinent part:

> The Constitution, and Laws of the United States . . . shall be the supreme Law of the Land . . . any thing in the Constitution or Laws of any State to the Contrary notwithstanding.

Preemption occurs when the federal statutory scheme "occupies the field" of regula-

---

**2.** Although the affidavit of Donald J. Skovholt, the Commission's Assistant Director for Quality Assurance and Operations, submitted by plaintiffs does contradict the affidavit of Leonard R. Solon, the Board's Director of the Bureau for Radiation Control submitted by defendants, regarding the accuracy of several conclusions reached by the Commission and the City in their respective reviews of the safety of the Columbia reactor, those factual disputes are not material to the plaintiffs' claim that as a matter of law Congress has preempted the regulation of nuclear reactors from the standpoint of radiological health and safety to the exclusion of the City's ordinance.

tion leaving no room for the enactment of state or local legislation on the same subject, whether or not such legislation actually conflicts with the federal law. *See, e. g., Campbell v. Hussey,* 368 U.S. 297, 300–01, 82 S.Ct. 327, 7 L.Ed.2d 299 (1961).

The most obvious cases of preemption occur where Congress has expressly stated in the federal statute or in its legislative history that federal regulation was intended to be exclusive. *See Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 236, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947); *Pennsylvania v. Nelson,* 350 U.S. 497, 501–02, 76 S.Ct. 477, 100 L.Ed. 640 (1956). However, even where Congress has not made an unambiguous declaration that it intends to occupy a field, the intent to preempt state and local law may nevertheless be implied:

> [The congressional] purpose may be evidenced in several ways. The scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it. . . . Or the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject. . . . Likewise, the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose. . . .

*Rice v. Santa Fe Elevator Corp., supra,* 331 U.S. at 230, 67 S.Ct. at 1152. *Accord, Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 157, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978).

Preemption also occurs when there is a direct or actual conflict between the state or local regulation and the federal regulatory scheme. As the Supreme Court recently noted in *Ray v. Atlantic Richfield Co., supra* at 158, 98 S.Ct. at 994, even where Congress has not completely foreclosed state or local regulation in a particular area, the finding of a conflict with federal law will result in the invalidation of the local enactment:

> A conflict will be found "where compliance with both federal and state regula-

tions is a physical impossibility . . ," or where the state "law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

Where there is such a conflict, the local legislation is not insulated by its wisdom or nobility; for the purposes of the Supremacy Clause, the merit of the local enactment is irrelevant. *See, e. g., Franklin National Bank v. New York,* 347 U.S. 373, 378–79, 74 S.Ct. 550, 98 L.Ed. 767 (1954).

The instant case is not the first time that the federal judiciary has had to apply these preemption principles in the context of federal regulation of nuclear energy. The first state to challenge the federal regulatory scheme was Minnesota, which attempted to impose more stringent requirements than those established by the Commission on the level of radioactive discharges of a nuclear power plant. The plant was licensed by the Commission and in full compliance with all federal laws and radiation safety requirements. The utility company which owned the power plant in question sought a judgment declaring Minnesota to be without authority to regulate in this area. In *Northern States Power Company v. State of Minnesota,* 447 F.2d 1143 (8th Cir. 1971), *aff'd mem., Minnesota v. Northern States Power Co.,* 405 U.S. 1035, 92 S.Ct. 1307, 31 L.Ed.2d 576 (1972), the Eighth Circuit held that Minnesota's attempts to regulate were preempted by the federal government which possessed exclusive authority to regulate the construction and operation of nuclear power plants.

In reaching its conclusion, the Court in *Northern States* conducted a thorough analysis of the Atomic Energy Act of 1954, as well as its amendments. The Court placed principal reliance on the 1959 Amendment to the Act, § 274 of the Act, 42 U.S.C. § 2021, which provides a definition of the respective regulatory roles to be played by the state and federal governments in the area of nuclear energy. The Court noted that the intent of § 274, as declared in 42 U.S.C. § 2021(a), was to recognize the interests of the states in the peaceful use of

atomic energy and to promote federal—state cooperation by establishing procedures and criteria for the "discontinuance of certain of the Commission's regulatory responsibilities" and for "the assumption thereof by the states." *Northern States Power Company v. State of Minnesota, supra,* 447 F.2d at 1148. The Court went on to observe that the major substantive portion of the new section, 42 U.S.C. § 2021(b), authorized the Commission to enter into agreements with individual states for the discontinuance of its regulatory authority with respect to limited quantities of nuclear materials and that during the duration of such an agreement, the state was authorized to regulate within its boundaries such materials for the protection of public health and safety from radiation hazards. *Id.* However, the *Northern States* court emphasized that the authority which the Commission could grant to the states was expressly limited by § 274(c) of the amendment, 42 U.S.C. § 2021(c), which prohibits state regulatory authority under such agreements from extending to the regulation of nuclear reactors:

No agreement entered into pursuant to subsection (b) of this section shall provide for discontinuance of any authority and the Commission shall retain authority and responsibility with respect to regulation of—

(1) The construction and operation of any production or utilization facility

. . . .

*Id.,* at 1149.

After its painstaking analysis of the statutory language, the Court in *Northern States* found that § 274, 42 U.S.C. § 2021, of the Act clearly established two fundamental principles with respect to the relationship of the federal and local governments in the area of nuclear regulation: first, that "Congress intended federal occupancy of regulations over all radiation hazards except where jurisdiction was expressly ceded to the states;" and second, that the Commission was expressly prohibited from turning over to the states its authority and responsibility with respect to the regulation of certain specified activities, including the

construction and operation of nuclear power plants. *Northern States Power Company v. State of Minnesota, supra,* 447 F.2d at 1150. The Court found "an inescapable implication that the federal government possessed exclusive authority absent the agreements authorized by the 1959 amendment." *Id.* Thus, the *Northern States* Court observed: " . . . [T]he Act, as amended and its legislative history, when viewed together, provide the strongest manifestation of Congressional intent to pre-empt the field of regulation over the construction and operation of nuclear reactors." *Id.,* at 1152. Finally, the Court, noting that the nature of the subject matter required uniform regulation, buttressed its finding of implied pre-emption by reference to the Commission's construction of the statute and the pervasiveness of the federal regulatory scheme. *Id.,* at 1152–53.

In this Court's view, the Eighth Circuit's exhaustive analysis and reasoning in *Northern States,* subsequently affirmed summarily by the Supreme Court, *Minnesota v. Northern States Power Co.,* 405 U.S. 1035, 92 S.Ct. 1307, 31 L.Ed.2d 576 (1972), and recently reaffirmed by a unanimous Supreme Court, *Train v. Colorado Pub. Int. Research Group,* 426 U.S. 1, 15–17, 96 S.Ct. 1938, 48 L.Ed.2d 434 (1976), is equally applicable to the instant case.

Although the defendants apparently concede that Congress has preempted an area of the regulation of nuclear reactors, they advance three major arguments in support of their position that the City ordinance at issue here falls outside the scope of this preemption and that the *Northern States* decision is inapposite to the case at bar.

As their first argument, defendants contend that an analysis of the Act and its legislative history reveals that neither Congress nor the Commission intended to prohibit completely states and localities from regulating the radiation hazards associated with the operation of nuclear reactors. Initially, the City relies upon an expression of opinion by a member of Office of General Counsel of the Commission, Robert Lowen-

stein, to the Joint Congressional Committee on Atomic Energy, which was in the process of enacting section 274 of the Act, 42 U.S.C. § 2021. During the course of hearings held in May, 1959, the following exchange took place between David R. Toll, staff counsel to the Joint Committee, who asserted the need for an express preemption provision with specific reference to nuclear reactors, and Mr. Lowenstein, who suggested that such a provision be omitted so as to allow for the possibility of various unidentified gray areas:

Mr. TOLL. On that question, and also on the question of reactors, does this bill go far enough? Does it really clear the air as to whether or not the States have authority to license reactors and control shipments in interstate commerce? Should there be a statement that these activities are expressly preempted to the Federal Government?

Mr. LOWENSTEIN. Under this bill which gives explicit reference to the interest of the Federal and State Governments, we think it would be fairly apparent, as many of us now believe under the existing Atomic Energy Act, that there has been an area of preemption. We consider the desirability of writing the kind of provision you suggest, Mr. Toll, and we decided against it, primarily for the reason that it is practically impossible to try to define, taking into account all of the various gray areas and special circumstances that might arise, where these areas of preemption should begin or end.

\* \* \* \* \* \*

Mr. LOWENSTEIN. We thought that this act without saying in so many words did make clear that there is preemption here, but we have tried to avoid defining the precise extent of that preemption, feeling that it is better to leave these kinds of detailed questions perhaps up to the courts later to be resolved.

Hearings before the Joint Committee on Atomic Energy on Federal-State Relationships in the Atomic Energy Field, 86th Cong., 1st Sess. ("1959 Hearings") at 307–08. On the basis of this statement by Mr. Lowenstein, the City contends that the Commission and Congress intended to leave a gray area which would not be preempted and that this area includes siting regulations founded upon radiological safety criteria.

The difficulty with this part of defendants' argument may be demonstrated in at least two ways. First, even if Mr. Lowenstein's remarks accurately portrayed the views of the Commission, the gray area was not intended to permit concurrent regulation of federally licensed nuclear reactors. Mr. Lowenstein's own comments make this clear:

Mr. LOWENSTEIN. Now, what we are asking the Congress for is legislation to provide a mechanism for defining State responsibility and for the State to pick up some of this load.

Representative DURHAM. Do you think it is possible at the present time to define pretty definitely the areas, or would you just more or less take it piecemeal?

Mr. LOWENSTEIN. I would not call it a piecemeal approach. It defines the areas which the Commission now believes that most, if not all, States have a good potentiality for being able to control during the next several years.

It reserves for continued Commission control reactors and quantities of special nuclear materials sufficient to form a critical mass, because we now believe that the Federal interests in these two areas are such, and that the lack of trained people and the complexity of these areas are such, that right now we should not consider turning those over to the States. . . .

1959 Hearings, pp. 301–02. Thus, even if a gray area had been intended, in the words of the person who coined the phrase it was not intended to include radiological regulation of nuclear reactors. At best, the Commission's and Congress' intent was, as defined by Mr. Lowenstein at the conclusion of the hearings, " . . . only to get away from the rigidity of statutory construction." 1959 Hearings, p. 493.

Secondly, as plaintiffs point out, the Lowenstein statement was an erroneous expression of opinion by one Commission employee which was soon corrected through the testimony of the chairman of the agency, John M. McCone, as well as in a subsequent letter from the Commission to the Joint Committee. Specifically, following the May, 1959 hearings at which Mr. Lowenstein testified, the Joint Committee rejected his testimony by proposing the following express preemption provision to be incorporated within section 274(k) of the Act:

> It is the intention of this Act that State laws and regulations concerning the control of radiation hazards from byproduct, source, and special nuclear materials shall not be applicable except pursuant to an agreement entered into with the Commission, pursuant to subsection b.: *Provided, however,* That States may adopt registration requirements for such materials and may inspect the use of such materials within the State to assure compliance with the Commission's regulations. Nothing in this section shall be construed to affect the authority of any State or local agency to regulate activities for purposes other than protection against radiation hazards.

1959 Hearings, p. 488.

Another hearing was held in August, 1959 to consider this proposal. At that time Chairman McCone requested that the express preemption provision (the first sentence) be deleted on the ground that it stated "explicitly what is substantially implicit in the bill without the sentence." 1959 Hearings, p. 489. The Commission's position was thereafter confirmed in a letter to the chairman of the Joint Committee which stated the following

> At the hearing, we recommended the omission of the sentence. In making this recommendation, we did not intend to change the substantive effect of the bill because we believe that under this bill, with or without the sentence, the Federal Government will clearly have "preempted" the regulation and control of radiation hazards from source, byproduct, and special nuclear materials. In either

event, preemption will end in any State only upon the effective date of an agreement between the State and the Commission under subsection b, and only to the extent provided in the agreement.

> In suggesting the elimination of the sentence, we did not intend to leave any room for the exercise of concurrent jurisdiction by the States to control radiation hazards from those materials. Our sole purpose was to leave room for the courts to determine the applicability of particular State laws and regulations dealing with matters on the fringe of the preempted area in the light of all the provisions and purposes of the Atomic Energy Act, rather than in the light of a single sentence.

> For example, in the absence of the sentence, the courts might have greater latitude in sustaining certain types of zoning requirements which have purposes other than control of radiation hazards, even though such requirements might have an incidental effect upon the use of source, byproduct, and special nuclear materials licensed by the Commission.

1959 Hearings, p. 500. Thus, the Commission's position was not that a gray area existed as defendants contend, but, rather, that even without an express preemption provision, section 274 clearly preempted state regulation of radiation hazards except pursuant to an agreement with the Commission, and then only to the extent permitted by that agreement. It was on this basis, that the Joint Committee, although with substantial misgivings, *see, e. g.,* 1959 Hearings, pp. 489–96, accepted the Commission's interpretation and deleted the express preemption provision.

While an express preemption provision was omitted at the request of the Commission, this was done only after the Commission stated its view that it "did not intend to leave any room" for the exercise of such concurrent jurisdiction. Indeed, if this omission was intended to create any latitude, it would be *only* within the framework of section 274(k) which permits state and local regulation for *purposes other than*

*protection against radiation hazards.*[3] See generally Murphy & La Pierre, *Nuclear "Moratorium" Legislation in the States and the Supremacy Clause: A Case of Express Preemption,* 76 *Colum.L.Rev.* 392, 398–405 (1976).

Defendants also argue that the nature or extent of preemption found in several other federal statutes militates against plaintiffs' main contention in the instant case that the Atomic Energy Act completely preempted state or local regulation of nuclear facilities from the standpoint of radiological hazards. They assert that Congress rarely completely preempts an area from state and local control. Arguments of this sort are particularly unhelpful in this area of the law where each case must turn upon an examination of the particular federal law and local regulations in question. As plaintiffs argue, the nature or extent of preemption found in other statutes is simply not relevant to the determination of the scope of preemption in the Atomic Energy Act.

Defendants also rely upon a 1962 section 274 agreement between the State of New York and the Commission as further evidence that the Commission's authority over the regulation of radiation hazards was not meant to be exclusive. Such reliance is, again as the plaintiffs argue, misplaced. The agreement is with the State, not the City, and section 274 of the Act makes no provision for the ceding of any regulatory authority to entities other than states. In any event, the City ordinance is contrary to the terms of the Commission's agreement with New York State inasmuch as the agreement effectively exempts federally licensed activities from state radiation regulation. *See U. S. Atomic Energy Commission—Notice of Agreement with the State of New York,* 27 Fed.Reg. 10419, Article VII (1962).

As final support for their primary argument, defendants point to several additional statements by members of the Joint Committee on Atomic Energy offered during the debate on the proposed express declaration of preemption sentence to be added to section 274(k), which suggest the individual speakers' views that deference should be accorded a state which would not want a reactor built at a particular site within its boundaries. However, an examination of the dialogue indicates that the hypothetical states to which the speakers were referring were "agreement states" within the meaning of section 274 of the Act, and, as noted above, the City is not and cannot be an "agreement state."

More importantly, even if the views of these individual members were supportive of defendants' argument here, the legislative history demonstrates that a much broader interpretation was ultimately adopted by Congress. The Joint Committee's Report clearly establishes Congress' view that except in the context of a section 274 agreement the regulation of radiation hazards was to remain the exclusive responsibility of the Commission. *See* Senate Report No. 870, reproduced in 1959 U.S.Code Cong. & Admin.News, p. 2872. As stated in *Northern States Power Company v. State of Minnesota, supra,* 447 F.2d at 1152:

The value of the Joint Committee report as an explicit manifestation of the intent of Congress that the federal government retain exclusive control over the construction and operation of nuclear reactors cannot be disputed. . . . And the view expressed in this report, of course, takes precedence over any conflicting expressions of opinion in the hearings or debates. . . .

Thus, in the Court's view, the legislative history of section 274 demonstrates an unmistakable Congressional intent that radiological regulation of the operation of nuclear reactors be preempted from concurrent state and local regulation.

---

**3.** Section 274(k), 42 U.S.C. § 2021(k), as ultimately adopted, provides:

State regulation of activities for certain purposes.

Nothing in this section shall be construed to affect the authority of any State or local agency to regulate activities for purposes other than protection against radiation hazards.

As their second major argument against a finding of preemption here, defendants contend that the Atomic Energy Act's licensing procedures do not require the Commission to concern itself with local siting or safety considerations and that the Commission in fact did not consider local considerations in issuing an operating license for the Columbia reactor. Defendants argue that the City ordinance and the decision denying Columbia a certificate were therefore proper exercises of their police power to regulate on the fringe of a federally preempted area. The Court finds no support for this contention.

It is well-settled in the express requirements of the Act, specifically 42 U.S.C. §§ 2134, 2232, and in the case law construing the Act, that before licensing the operation of a nuclear reactor, the Commission must "make a positive finding that operation of the facility will 'provide adequate protection to the health and safety of the public.'" *Power Reactor Co. v. Electricians,* 367 U.S. 396, 405–06, 81 S.Ct. 1529, 1534, 6 L.Ed.2d 924 (1961). To facilitate this finding, the Act requires that the applicant for a license submit technical information about the reactor, including "information of the amount, kind, and source of special nuclear material required [to operate the reactor], the place of the use, the specific characteristics of the facility, and such other information as the Commission may . . . deem necessary . . . ." 42 U.S.C. § 2232(a). Moreover, no nuclear reactor will be licensed by the Commission unless it determines that, among other things, the proposed facility can be constructed and operated "at the proposed location without undue risk to the health and safety of the public." 10 C.F.R. 50.35(a). *See also* 10 C.F.R. §§ 50.40, 50.50, 50.56–57. Indeed, "the site and all its properties are among the most important ingredients of a finding of safety *vel non*." *Power Reactor Co. v. Electricians, supra,* 367 U.S. at 414, 81 S.Ct. at 1538.

In any event, the administrative record of the proceedings leading to the issuance of Columbia license in the instant case demonstrates that the local setting of the reactor was considered at length. In fact, the ASLB characterized the question whether: the "[o]peration of the reactor in the Terrace Building involves serious risk of radiological hazards to a densely populated area, including a residential community, both from the planned usage of the reactor and from accident circumstances, including those from external causes," as relating directly "to basic issues in this proceeding which are adjudicated by the Licensing Board in this Initial Decision." *In the Matter of Trustees of Columbia University in the City of New York,* 4 A.E.C. 594, 598 (1971). Moreover, the ASLB's findings of fact fully addressed the situs of the reactor including: (1) reactor housing; (2) surrounding neighborhood, including population density; (3) geologic history of the site; (4) proximity to the Hudson River and the danger of flooding; and (5) Columbia's emergency and security plans. *Id.,* 4 A.E.C. at 604, 618, 869–70. In considering the Columbia reactor under potential accident conditions, the ASLB specifically noted that the reactor's site was important to the question of whether "the applicant's reactor might be considered either safe or unsafe for licensing." *Id.,* 4 A.E.C. at 609. The ASLB also examined the accident possibilities posed by "sabotage of the reactor" and by "a burning aircraft crash," *id.,* 4 A.E.C. at 610, and made findings regarding the maximum accident to be postulated for the reactor and the fraction of the reactor's radioactivity assumed to be released if there were an accident, *id.,* 4 A.E.C. at 611–16. In short, the Commission considered all relevant local aspects of the reactor.

Consequently, the City's argument that the Commission's scope of responsibility does not include consideration of local siting matters or that the Commission considers only generic safety factors and not peculiarly local ones in reviewing an operation license, must be rejected. Thus, the City is relegated to the argument that both the Commission and the City may regulate the local radiological safety aspects of the Columbia reactor. However, as the Court in

**614**

*Northern States* held and as this Court concludes upon its own analysis, Congress did not leave room for dual federal-state regulation of radiation hazards associated with the operation of nuclear reactors.

The defendants' final argument is that even if Congress has preempted the regulation of nuclear reactors from the standpoint of radiological health and safety, the City ordinance in question falls outside the scope of this preemption because it regulates non-radiation hazards and the Atomic Energy Act expressly permits this type of local regulation. The Court need not tarry very long with this particular argument. Not only is it inconsistent with the purpose of the ordinance as intended at the time of its enactment, as set forth above, but it is contrary to the application of the ordinance as exemplified by the City's decision rejecting Columbia's application for a certificate of Health and Safety for Nuclear Reactor Operation. The record before the Court unequivocally indicates that the City's decision was based entirely upon the alleged possibility of injury resulting from an accidental release of radiation. In short, this argument is without merit.

For the reasons stated, the Court concludes that the federal government has exclusive authority under the doctrine of preemption to regulate the construction and operation of nuclear reactors, which necessarily includes licensing for radiological health and safety.[4] Section 175.107(c) of the New York City Health Code establishing a dual system of licensing and regulation with control exerted by both the City and the federal government is, therefore, void. Plaintiffs' motion is granted and defendants' cross-motion is denied.

Settle judgment on notice.

---

**4.** Having reached this conclusion, the Court need not address plaintiffs' alternative argument that even if the City ordinance were not preempted by Congress, it must fall because of its potential for impeding the accomplishment and execution of the Act's purposes and objectives.