**PACIFIC LEGAL FOUNDATION, a nonprofit California Corporation, the San Diego Coalition, a nonprofit California Corporation, San Diego Section of the American Nuclear Society, a New York Corporation, San Diego County Building and Construction Trades Council, a labor organization, and Robert C. Thornberry, an individual, Plaintiffs,**

v.

**STATE ENERGY RESOURCES CONSERVATION & DEVELOPMENT COMMISSION, a state agency, Richard L. Maullin, Chairman, and Commissioners Emilio E. Varanini, III, Arland D. Pasternak, C. Suzanne Reed, and Ronald D. Doctor, Defendants.**

**Natural Resources Defense Council, Inc., The Sierra Club; Environmental Defense Fund; Californians for Nuclear Safeguards, Defendants-Intervenors.**

Civ. No. 78–711–E.

United States District Court,
S. D. California.

March 6, 1979.

Ronald A. Zumbrun, Raymond M. Momboisse, Robin L. Rivett, Pacific Legal Foundation, Sacramento, Cal., for plaintiffs.

Richard M. Mosk, Marilyn E. Levine, Mitchell, Silberberg & Knupp, Los Angeles, Cal., William M. Chamberlain, Gen. Counsel, Mark J. Urban, Kathryn Burkett Dickson, Deputy Gen. Counsel, Calif. Energy Resources Conservation and Development Commission, Sacramento, Cal., Antonio Rossman, Sp. Counsel, San Francisco, Cal., for defendants.

Roger Beers, Kenneth A. Manaster, Paul C. Valentine, Palo Alto, Cal., for Natural Resources Defense Council.

David E. Pesonen, San Francisco, Cal., for Californians for Nuclear Safeguards.

Laurens H. Silver, William S. Curtiss, San Francisco, Cal., for the Sierra Club.

David B. Roe, Berkeley, Cal., for Environmental Defense Fund.

## MEMORANDUM DECISION

ENRIGHT, District Judge.

This case involves a challenge to the constitutionality of three sections of the California Public Resources Code: sections 25524.1, 25524.2 and 25524.3. Plaintiffs contend that these sections, which impose certain requirements on the certification of nuclear fission thermal power plants in this state, invade a field of regulation which has been preempted by the federal government. Specifically, plaintiffs assert that the Atomic Energy Act of 1954, *as amended*, 42 U.S.C. §§ 2011–2281 (1970), preempts the state laws in question.

Before the court for resolution are plaintiffs' motion for summary judgment, defendants' motion to reconsider the motion to dismiss the complaint or, in the alternative, to certify an interlocutory appeal, and cross motions brought to strike the various affidavits and exhibits filed both parties. Upon due consideration of the memoranda filed by the parties, the declarations and exhibits, and the arguments of counsel, and for the reasons set forth herein, the court rules as follows: the motion to reconsider the motion to dismiss is denied, as is the motion to certify an interlocutory appeal, plaintiffs' motion for summary judgment is granted, and the various motions to strike are resolved as set forth below.

Originally, the federal government retained exclusive authority over the development and use of atomic energy. Act of

Aug. 1, 1946, ch. 724, 60 Stat. 755. In 1954, Congress recognized that private businesses might play a role in the peaceful development and generation of nuclear power. Congress passed the Atomic Energy Act of 1954, *as amended*, 42 U.S.C. §§ 2011–2281 (1970), establishing the Atomic Energy Commission (AEC)[1] to regulate and promote the use of nuclear energy. Licensing and regulation of nuclear materials was subject to federal authority, in order to ensure public safety and national security. *Id.* § 2012.

In 1959, Congress sought to define the States' role in the regulation of nuclear materials by enacting amendments to the Atomic Energy Act. *Id.* § 2021. The amendments recognized the States' interest in the peaceful use of atomic energy and proposed to establish procedures whereby certain of the AEC's regulatory authority over source, by-product and special nuclear materials could be assumed by the States. The amendments provide for agreements between the governor of a State and the AEC to accomplish this purpose.

The amendments set forth specific limits on the delegation of regulatory authority with regard to nuclear materials. The federal government retained responsibility for regulating "the construction and operation of any production or utilization facility," the import or export of nuclear materials, and the disposal of nuclear materials that the AEC decides shall not be disposed of without a license. *Id.* § 2021(c). The amendments also provided that the States may regulate "activities for purposes other than protection against radiation hazards." *Id.* § 2021(k).

In 1974, the California legislature enacted the Warren-Alquist State Energy Resources Conservation and Development Act, establishing a comprehensive power-plant siting procedure for new thermal-electric power plants and vesting exclusive jurisdiction to approve such power plants in the State Energy Resources Conservation and Development Commission. Cal.Pub.Res.Code §§ 25000–25968. The Energy Commission must review safety and reliability factors for all types of thermal power plants. *Id.* §§ 25001 & 25511. In 1976, three statutes imposing certain requirements for the construction of nuclear power plants were added. Cal.Pub.Res.Code §§ 25524.1, 25524.2 & 25524.3. These three sections are the subject of the instant lawsuit. Plaintiffs contend that these three sections of the Public Resources Code, referred to herein as the California Nuclear Laws, invade a field of regulation which has been preempted by the federal government under the Atomic Energy Act of 1954.

California Public Resources Code section 25524.1(a) provides that no new nuclear fission thermal power plant requiring the reprocessing of fuel rods shall be permitted land use in the state or certified by the Energy Commission until (1) the Energy Commission finds that the United States agency has approved a technology for the construction and operation of nuclear fuel rod reprocessing plants and (2) the commission has reported its findings to the state legislature, which has the power to disaffirm them. Subsection (b) of this statute requires the state commission to make a case-by-case determination that adequate fuel rod reprocessing capacity or waste storage capacity will be available by the time a particular facility requires reprocessing or waste storage.

Section 25524.2 provides that no nuclear power plant shall be certified by the state commission until it finds (1) that the authorized United States agency has approved a technology for disposal of high-level nuclear wastes and (2) the commission has reported its findings to the state legislature, which has the power to disaffirm them.

---

1. In 1974, the Energy Reorganization Act became law, transferring the licensing and regulatory functions of the Atomic Energy Commission to the Nuclear Regulatory Commission (NRC). 42 U.S.C. § 5841(f). The AEC's previous research and development functions were transferred to the Energy Research and Development Agency and, later, to the Department of Energy. *Id.* §§ 7101–7352. Thus, while the NRC is the successor agency to the AEC, it retains only licensing and regulatory functions.

Section 25524.3 applies to nuclear power plants for which notices of intent are filed with and accepted by the state commission after January 1, 1980. The commission cannot certify these plants until (1) the commission completes a study of the necessity, effectiveness and economic feasibility of berm containment and locating reactors under ground and (2) the legislature evaluates the study.

California Public Resources Code section 25524.25 required the California Energy Commission to inform the legislature by January 1978 whether the findings on fuel rod reprocessing and waste disposal could be made. The Energy Commission has concluded that section 25524.1(a), referring only to power plants that require nuclear fuel rod reprocessing, is not applicable because reprocessing is not required by the federal government nor required by technical operational requirements. *In the Matter of Implementation of Nuclear Reprocessing and Waste Disposal Statutes*, No. 76–NL–1, 76–NL–3, at 5 (Jan. 25, 1978). As to subsection 25524.1(b), the commission determined that it will, as mandated by statute, evaluate on a case-by-case basis the fuel storage capacity at individual reactor sites. *Id.* The commission found that the findings required by section 25524.2 could not be made because the federal agencies have not approved a waste disposal technology. *Id.*

With respect to section 25524.3, the commission has reported that rules and regulations on undergrounding and berm containment are not warranted. Staff of California Energy Commission, *Draft, Underground Siting of Nuclear Power Reactors: An Option for California: A Summary of the Technical and Economic Implications with Recommendations* iv, v, xi, 9–4 (June 1978). The Energy Commission has adopted this report. *In the Matter of Determinations of the Commission Pursuant to Public Resources Code Section 25524.3*, No. 76–NL–2 (Sept. 13, 1978).

### I

As a preliminary matter, the court notes that sections 25524.1 and 25524.3 have been rendered moot by the decisions of the California Energy Commission. The commission has determined that section 25524.1(a) does not apply to any reactors proposed for California. Section 25524.1(b) requires a case-by-case evaluation of fuel storage capacity at individual reactor sites. No particular storage capacity is specified. Plaintiffs have failed to demonstrate how this section impedes the development of nuclear power in California.

Similarly, section 25524.3 is not implicated in the present controversy. By its terms, this section applies only to power plants for which a notice of intent is accepted after January 1, 1980.

Plaintiffs argue that the federal government could reinstitute a reprocessing requirement, at which time the California statute would apply. In the event that action occurred, plaintiffs could institute a challenge at that time. Issues will not be found moot if they are capable of repetition, yet likely to evade review. *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). While the issues presented here might be capable of repetition, plaintiffs have not shown that these issues are likely to evade review if a reprocessing requirement is instituted.

Accordingly, the court concludes that only section 25524.2, requiring the existence and approval of a high-level waste disposal technology which the Energy Commission has determined not to exist, presently impedes certification of nuclear power plants in California.

### II

Before proceeding to the substantive issue of preemption, the court must determine that plaintiffs have a personal stake in the outcome of the controversy, entitling them to invoke the court's determination of the constitutional issues presented. For purposes of the motion for summary judgment, plaintiffs rely on their allegations of lost jobs and harm to the environment as providing standing to sue. Defendants con-

tend that plaintiffs' declarations and exhibits offered in support of their alleged injuries are incompetent and speculative. Further, defendants claim that their own affidavits place many of the alleged effects of alternate energy source development at issue, and raise a factual dispute as to the existence of the alleged injuries.

■ The court finds it unnecessary to rule on the numerous objections to the declarations and exhibits filed by both parties. Only one plaintiff, Robert Thornberry, has presented evidence of a particularized injury due to the California Nuclear Law.[2] As to this plaintiff's injury, the facts are unequivocal.

Thornberry was hired by San Diego Gas and Electric Company and assigned to work on the licensing of the Sundesert nuclear power project in Southern California. Shortly after San Diego Gas and Electric Company's board of directors resolved to terminate the Sundesert project, Mr. Thornberry lost his job due to a reduction in force.

Defendants do not dispute that Thornberry suffered an injury. Nor do they dispute that Thornberry lost his job as a result of the suspension of Sundesert. However, they attack the causal connection in another way, arguing that Thornberry's injury is not a result of the California Nuclear Laws because the Sundesert project would have been terminated in any event due to the utility company's inability to secure a general rate increase to finance work in progress.

Plaintiffs agree that financial impediments contributed to the demise of Sundesert. However, plaintiffs submit that an independent reason the utility company suspended Sundesert was the California Nuclear Laws. This contention is supported by the resolution of San Diego Gas and Electric Company's board of directors, listing the utility's failure to obtain an exemption from the nuclear laws as one reason for suspending the Sundesert project. This contention is uncontroverted by defendants' declarations, which state only that in the declarants' opinions Sundesert was closed due to failure to obtain a rate increase.

Although the causal connection is indirect, the connection is sufficient to provide standing. *Duke Power Company v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 75 n.20, 98 S.Ct. 2620, 2631 n.20, 57 L.Ed.2d 595, 612 n.20 (1978); *United States v. SCRAP*, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973). As revealed by the utility's board of directors, the California Nuclear Laws were perceived as a substantial impediment to final certification of the Sundesert power plan and additional expenditures were authorized only until the company had time to pursue an exemption from these laws. The court finds a "substantial likelihood" that the Sundesert project would proceed absent the California Nuclear Laws and that Thornberry would not have been terminated. *Duke Power Company v. Carolina Environmental Study Group, Inc., supra; Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 261, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977).

### III

■ Defendants have also questioned the ripeness of the issues for judicial resolution, both by seeking a reconsideration of this court's ruling on the motion to dismiss and by various declarations which defendants claim raise factual disputes as to ripeness.

The rationale for the ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling

---

2. With the exception of plaintiff Robert Thornberry's declaration and exhibits, the declarations offered in support of plaintiffs' standing to sue fail to demonstrate a concrete injury as a result of the California Nuclear Laws. The court finds the general allegations of lost jobs and environmental harm to be speculative, conclusory and unsupported by specific facts. In addition, no causal connection between the alleged injuries and the California Nuclear Laws is conclusively established. In contrast, the court finds Thornberry's injury to be concrete and traceable to the Energy Commission's decisions effectively placing a moratorium on the development of nuclear power plants in California.

196

'themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Laboratories v. Gardner* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967).

In the present case a moratorium has been effected by formal agency action. The California Energy Commission has determined that the specified findings on waste disposal, without which no nuclear power plant may be certified, cannot be made. Indisputably, no nuclear power plants can be licensed in California, at least temporarily. Even Professor Tribe, a strong proponent of the California Nuclear Laws, has concluded:

> "In light of the findings in its decision, the Energy Commission cannot presently certify any nuclear fission thermal power plants. The conditions imposed by the nuclear provisions will prevent such certification until the technology or means for disposing of high-level radioactive wastes actually exists, and is approved by the federal government. The Energy Commission projects that such capability will be available no sooner than the mid-1980's; the time required may easily extend into the 1990's."

Tribe, *California Declines the Nuclear Gamble: Is Such a State Choice Preempted?*, 7 ECOLOGY L.Q. 679, 683 (1979) (footnotes omitted).

Plaintiff Thornberry has demonstrated that he feels the effects of the moratorium in a concrete way. As a result of San Diego Gas and Electric Company's failure to gain an exemption from the California Nuclear Laws for its Sundesert project, Mr. Thornberry lost his job. This plaintiff has demonstrated that the moratorium itself contributed to the suspension of Sundesert and caused his injuries.

### PREEMPTION OF PUBLIC RESOURCES CODE SECTION 25524.2

The doctrine of federal preemption of state authority has its origin in the "Supremacy Clause" of Article VI of the Constitution, which declares that:

> "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the Supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

When, as here, a State's exercise of its police power is challenged under the Supremacy Clause, a federal court must commence its analysis "with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947); *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978). One of the legitimate inquiries is whether Congress has either explicitly or implicitly prohibited the States from regulating matters which relate to nuclear waste disposal or to the construction and operation of nuclear power plants.

Express preemption occurs when Congress has expressly stated either in a federal statute or in the legislative history pertaining thereto that federal regulation was intended to be exclusive. *Railway Employees' Department v. Hanson*, 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956); *Pennsylvania v. Nelson*, 350 U.S. 497, 501–02, 76 S.Ct. 477, 479, 100 L.Ed. 640 (1956); *Schwabacher v. United States*, 334 U.S. 182, 197, 68 S.Ct. 958, 966, 92 L.Ed. 1305 (1948).

Even in the absence of an express Congressional declaration that federal regulation is intended to be exclusive, federal preemption may be found by implication:

> "[The Congressional] purpose may be evidenced in several ways. The scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it. . . . Or the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the

same subject. . . . Likewise, the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose. . . ."

*Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947).

Finally, even if Congress has not completely foreclosed state legislation in a particular area, a state statute is void to the extent that it actually conflicts with a valid federal statute. *Ray v. Atlantic Richfield Co., supra*, 435 U.S. at 158, 98 S.Ct. at 994. A conflict in this sense may be found in at least two types of circumstances. First, conflict preemption will occur "where compliance with both federal and state regulation is a physical impossibility." *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963). Second, a conflict will be found where the state "law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

Applying the foregoing principles of law, the court finds California Public Resources Code section 25524.2 preempted both because Congress has impliedly foreclosed state legislation on the subject of nuclear waste disposal and, alternatively, because the statute stands as an obstacle to the purposes and objectives of Congress as stated in the Atomic Energy Act of 1954, *as amended*, 42 U.S.C. § 2011 *et seq.*

### IMPLIED PREEMPTION

The issue of whether the federal government has preempted the sphere of radiological hazard regulation is not a matter of first impression in the federal courts. Thus

far the issue has been squarely confronted in two cases, and in both instances a conclusion of implied preemption was reached. *Northern States Power Company v. State of Minnesota*, 447 F.2d 1143 (8th Cir. 1971), aff'd mem., *Minnesota v. Northern States Power Co.*, 405 U.S. 1035, 92 S.Ct. 1307, 31 L.Ed.2d 576 (1972); *United States v. City of New York*, 463 F.Supp. 604 (S.D.N.Y.1978).

Minnesota, like California in the case at bar, attempted to regulate on the subject of radioactive waste disposal. Acting through its Pollution Control Agency, it established stringent standards for radioactive liquid and gaseous discharges from nuclear power plants licensed by the Atomic Energy Commission (AEC). The *Northern States* court, emphasizing the importance of the interrelationship between subsections (c) and (k) of 42 U.S.C. § 2021,[3] interpreted the Atomic Energy Act, *as amended*, to preclude concurrent state regulation of matters reserved to the AEC in section 2021(c) and found the Minnesota regulation preempted.[4] The Court arrived at this conclusion after a thorough examination of the legislative history pertaining to the Atomic Energy Act of 1954 and its subsequent amendment in 1959. The *Northern States* holding was extensively relied upon by a District Court which reached a similar result in *United States v. City of New York, supra.* In that case the court found that a provision of the New York City Health Code purporting to require licensing by the Commissioner of Health as a precondition to nuclear reactor operation was unconstitutional insofar as it had been impliedly preempted by the Atomic Energy Act.

Defendants apparently do not contest the reasoning and result of the courts in *Northern States* and *United States v. City of New York* except insofar as they make

3.  447 F.2d at 1149.

4.  "We are more concerned here with subsection (c) of § 2021 which *prohibits* the AEC from discontinuing its authority and responsibility with respect to the regulation of certain specified activities. . . . Minnesota interprets this subsection only as prohibiting *total* relinquishment by the federal government over nu-

clear power plants, but does not view the concurrent exercise of state control over nuclear facilities as being forbidden by the Act. . . . We cannot agree with Minnesota's position that dual control over atomic power plants and the level of effluents discharged therefrom is permissible under the Act. . . ." 447 F.2d at 1149.

certain arguments from the Clean Air Act amendments of 1977.[5] Instead, they seek to avoid the effect of these decisions by distinguishing them. Relying principally upon section 2021(k), defendants urge the court to uphold Public Resources Code section 25524.2 on the basis that the statute regulates "activities for purposes other than protection against radiation hazards." 42 U.S.C. § 2021(k). They suggest that section 25524.2 is valid because it was not enacted for the prohibited purpose of radiation control. Rather, the argument runs, it was enacted for the economic purpose of insuring that Californians will not have to bear the financial risk of funding nuclear power plants which may later be shut down because of inadequate permanent waste disposal facilities.

Initially, the court would note that defendants' argument rests upon an exceedingly broad interpretation of section 2021(k). The underlying premise seems to be that any sort of regulation at all is permissible as long as a state legislature is willing and ingenious enough to conjure up a legislative purpose other than radiation control. The evil inherent in giving conclusive effect to declared state legislative purposes to uphold a state statute or regulation which would otherwise be preempted has previously been recognized by the Supreme Court. *Perez v. Campbell*, 402 U.S. 637, 651–52, 91 S.Ct. 1704, 1712, 29 L.Ed.2d 233 (1971).[6] It would appear that under defendants' suggested interpretation of section 2021(k) the Minnesota regulation held unconstitutional in *Northern States* would have successfully withstood a preemption challenge if the Minnesota Pollution Control Agency or some other state authority had asserted the purpose of the regulation to be the minimization of future medical costs associated with a high incidence of cancer precipitated by the radioactive effluvia from the nuclear power plants.

More generally, the danger inherent in interpreting section 2021(k) in the broad manner defendants suggest is that the zone of exclusive federal regulation under section 2021(c) could readily be nullified through careful tailoring of state legislative purposes. If section 2021(k) is broadly interpreted to validate any state statute or regulation as long as there appears a stated purpose other than protection against radiation hazard, then the States would effectively be permitted to intrude into the preempted sphere and regulate radiation hazard under the guise of a permitted legislative purpose. It is scarcely credible that Congress, in enacting section 2021(k), intended to furnish the States with a means of evading and undermining the NRC's exclusive regulatory authority under section 2021(c). Rather, the better inference would seem to be that Congress envisioned that section 2021(k) would be interpreted in such a fashion as not to nullify what Congress provided in section 2021(c).

The legislative history of the 1959 amendments to the Atomic Energy Act of 1954 somewhat lends support to the view that

---

5. Defendants suggest that the 1977 amendments to the Clean Air Act, 42 U.S.C. § 7401 *et seq.*, manifest an intent of Congress to legislatively overrule *Northern States Power Company v. State of Minnesota*, 447 F.2d 1143 (8th Cir. 1971. Although the legislative history of the amendments appears to indicate Congressional disapproval of *Northern States* in the narrow context of radioactive air pollution, *see* House Rep. No. 95–564 at 143, there is no basis for the supposition that Congress disapproved of the decision in other contexts, such as, for example, nuclear waste disposal. Indeed, the legislative history of the amendments seems to affirmatively show that Congress was aware of the *Northern States* case and, except in the context of radioactive air pollution, declined to upset the major part of the holding.

6. The Court wrote in *Perez*: "We can no longer adhere to the aberrational doctrine of *Kesler* [*v. Dept. of Pub. Safety*, 369 U.S. 153, 82 S.Ct. 807, 7 L.Ed.2d 641] and *Reitz* [*v. Mealey*, 314 U.S. 33, 62 S.Ct. 241, 241, 86 L.Ed. 21] that state law may frustrate the operation of federal law as long as the state legislature in passing its law had some purpose in mind other than one of frustration. Apart from the fact that it is at odds with the approach taken in nearly all our Supremacy Clause cases, such a doctrine would enable state legislatures to nullify nearly all unwanted federal legislation by simply publishing a legislative committee report articulating some state interest or policy—other than frustration of the federal objective—that would be tangentially furthered by the proposed state law." 402 U.S. at 651–52, 91 S.Ct. at 1712.

Congress commended to the federal courts the task of interpreting section 2021(k) in a manner harmonious with section 2021(c). At the conclusion of the May 1959 hearings, the Joint Committee on Atomic Energy proposed to amend what is presently section 2021(k) as follows:

> "It is the intention of this Act that State laws and regulations concerning the control of radiation hazards from byproduct, source, and special nuclear materials shall not be applicable except pursuant to an agreement entered into with the Commission pursuant to subsection b. . . ."[7]

Subsequently, the General Manager of the AEC sent a letter to Chairman Anderson of the Joint Committee recommending deletion of this sentence:

> "At the hearing, we recommended the omission of the sentence. . . . In suggesting the elimination of the sentence, we did not intend to leave any room for the exercise of concurrent jurisdiction by the States to control radiation from those materials. *Our sole purpose was to leave room for the courts to determine the applicability of particular State laws and regulations dealing with matters on the fringe of the preempted area in the light of all the provisions and purposes of the Atomic Energy Act, rather than in the light of a single sentence.*"[8]

The Joint Committee adopted the AEC's suggestion and accordingly deleted the sentence. The weight given by the Joint Committee to the AEC's interpretation of section 2021(k) seems to indicate Congressional approval of the position that the precise extent of preemption under the section is to be determined by the courts in the light of all the provisions and purposes of the Atomic Energy Act.[9]

For the reasons stated above, the court finds itself unable to interpret section 2021(k) as giving conclusive effect to a declared state legislative purpose for purposes of determining the validity of a state statute or regulation under the section. That California may have predicated Public Resources Code section 25524.2 upon an economic purpose is not a sufficient condition for a finding of constitutionality. Instead of focusing narrowly on the issue of California's legislative purpose, the court will examine whether section 25524.2 impinges upon the sphere of exclusive regulatory jurisdiction reserved to the NRC in section 2021(c).

Section 2021(c) provides that the NRC shall retain authority and responsibility with respect to the regulation of the construction and operation of nuclear power plants and with respect to the regulation of nuclear waste disposal.[10] In the exercise of its discretion, the NRC has decided not to require the existence of a technology for the permanent disposal of nuclear waste as a condition precedent for the construction and operation of nuclear reactors. The NRC's decision in this regard falls within the preempted sphere because it relates to, touches upon and involves the regulation of radiation hazard pertaining to the construction and operation of nuclear power plants and to nuclear waste disposal. California has decided otherwise, decreeing that no nuclear power plant may be constructed in the State of California unless there exists a demonstrated technology for the disposal of nuclear waste. The court finds that the question of whether nuclear power plants may be constructed and operated in the absence of a demonstrated technology for

---

7. *Hearings Before the Joint Comm. on Atomic Energy on Federal-State Relationships in the Atomic Energy Field*, 86th Cong., 1st Sess. 488 (1959). (*Joint Comm. Hearings*).

8. *Joint Comm. Hearings* at 500. (Emphasis added)

9. *See* Murphy & La Pierre, *Nuclear 'Moratorium' Legislation in the States and the Supremacy Clause: A Case of Express Preemption*, 76 Colum.L.Rev. 392, 398–405 (1976): "As the

AEC recognized, the exact bounds of state regulation for these 'other' purposes, which may have an incidental effect on materials or facilities licensed by the Commission, cannot readily be determined. But it is only in this regard that section 274 [42 U.S.C. § 2021] leaves the precise extent of preemption to be answered by the courts."

10. 42 U.S.C. § 2021(c)(1), 2021(c)(4).

the permanent disposal of nuclear waste is exclusively reserved to the NRC by section 2021(c) and that state regulation on this subject is displaced. Accordingly, the court holds California Public Resources Code section 25524.2 impliedly preempted.

## PUBLIC RESOURCES CODE § 25524.2 AS AN OBSTACLE TO THE PURPOSES AND OBJECTIVES OF CONGRESS

Assuming *arguendo* that Congress has not completely foreclosed state regulation on the subject of radiation hazard control, California Public Resources Code section 25524.2 is nonetheless void because it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941), in encouraging and fostering the development, use and control of atomic energy.

The substantive provisions of the Atomic Energy Act of 1954 are preceded by general statutory provisions which set forth Congressional findings, a Congressional declaration of policy and Congressional purposes. 42 U.S.C. §§ 2011, 2012, 2013. These provisions appear to provide an excellent means of gauging the "purposes and objectives of Congress" within the meaning of the *Hines* decision. Section 2011 indicates that the development, use and control of atomic energy for the purpose of achieving certain ends is declared to be the policy of the United States. Section 2012 asserts as a Congressional finding that "[t]he development, utilization, and control of atomic energy for military and for all other purposes are vital to the common defense and security." 42 U.S.C. § 2012(a). Section 2013 manifests the intent of Congress to provide for "a program to encourage widespread participation in the development and utilization of atomic energy for peaceful purposes. . . ." 42 U.S.C. § 2013(d). When taken together, the foregoing provisions of law suggest that Congress contemplated the ongoing *development* of nuclear energy, subject to state and federal regulation. The court in *Northern States* reached

a similar conclusion as to the import of these statutory provisions:

"Congressional objectives expressed in the 1954 Act evince a legislative design to foster and encourage the development, use and control of atomic energy so as to make the maximum contribution to the general welfare and to increase the standard of living. 42 U.S.C. §§ 2011, 2012."

*Northern States Power Company v. State of Minnesota, supra*, 447 F.2d at 1153.

Congress' policy to encourage the development and utilization of nuclear energy would decidedly be frustrated if all fifty states had statutes similar to California Public Resources Code section 25524.2. Although the Atomic Energy Act certainly leaves room for the states to regulate on the subject of nuclear energy within the confines of section 2021(k) and 2021(b), the power to regulate is not necessarily the power to prohibit. There seems little point in enacting an Atomic Energy Act and establishing a federal agency to promulgate extensive and pervasive regulations on the subject of construction and operation of nuclear reactors and the disposal of nuclear waste if it is within the prerogative of the states to outlaw the use of atomic energy within their borders.

The court finds its conclusion of preemption strengthened by the analogous case of *First Iowa Hydro-Electric Cooperative v. Federal Power Commission*, 328 U.S. 152, 66 S.Ct. 906, 90 L.Ed. 1143 (1946). In that case, First Iowa Hydro-Electric Cooperative (First Iowa) sought to construct and operate a dam on the Cedar River in Iowa. Its application to the Federal Power Commission (FPC) for a license was denied on the basis that First Iowa had failed to submit satisfactory evidence of compliance with the laws of the State of Iowa. Among these laws was a statute requiring a party proposing to construct a dam to obtain a permit from the State Executive Council.

The Supreme Court found the FPC's denial of First Iowa's application unwarranted under the Federal Water Power Act and declined to interpret the Act as requiring a license applicant to demonstrate compliance

with state laws. The Court held that the purpose of the Act was to promote the comprehensive development of water resources of the United States; that the detailed provisions of the Act providing for the federal plan of regulation left no room or need for conflicting state controls.[11]

*First Iowa* appears to indicate that states cannot enact legislation which tends to frustrate national plans to develop resources for use in interstate commerce. Public Resources Code section 25524.2 is consequently preempted because it would seriously disrupt the national plan and policy of Congress for the development of nuclear energy.[12] The statute stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in developing the peaceful use of atomic energy.

Defendants have eloquently and articulately apprised the court of their concerns relative to the practicality and advisability of the use of nuclear energy as an alternative power source. The arguments advanced by defendants with respect to this subject are indeed weighty and not lacking in appeal. However, it is the province and duty of this court "to say what the law is," *Marbury v. Madison*, 1 Cranch. 137, 2 L.Ed. 60 (1803), rather than to pass on the public policy question of whether the states ought to utilize or not to utilize atomic energy or whether the federal government ought to grant autonomy to the states on the nuclear question. Many of the arguments made before this court, therefore, would seem more appropriately presented to Congress. .

For the reasons stated above, the court declares California Public Resources Code section 25524.2 unconstitutional.

---

**11.** 328 U.S. at 180–181, 66 S.Ct. at 919–920.

**12.** *See* Murphy & La Pierre, *Nuclear 'Moratorium' Legislation in the States and the Suprema-*

*cy Clause: A Case of Express Preemption*, 76 Colum.L.Rev. 392, 447–450 (1976).