We will therefore deny collateral relief under § 2255.

**LONG ISLAND LIGHTING COMPANY, Plaintiff,**

v.

**The COUNTY OF SUFFOLK, NEW YORK, a New York municipal corporation,**

**and**

**Peter F. Cohalan, in his official capacity as Suffolk County Executive, Defendants.**

No. CV–84–2698.

United States District Court, E.D. New York.

March 18, 1985.

Hunton & Williams by James E. Farnham, Richmond, Va., for plaintiff.

Paul, Weiss, Rifkind, Wharton & Garrison by Martin London, New York City, for defendants.

MEMORANDUM AND ORDER

ALTIMARI, District Judge:

The plaintiff, Long Island Lighting Company, instituted this action alleging that

the defendants have effected an inverse condemnation of the plaintiff's Shoreham nuclear power plant. The plaintiff also alleges that the defendants have breached certain contractual obligations. Plaintiff seeks a $4 billion judgment.

Defendants move to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated herein, defendants' motion is granted.

## BACKGROUND

The background to this action is essentially the same as that recounted in *Citizens for an Orderly Energy Policy, Inc. v. County of Suffolk*, 604 F.Supp. 1084 (E.D.N.Y.1985). Plaintiff, Long Island Lighting Company ("LILCO"), is a New York corporation engaged in the production and sale of electricity. In 1973, LILCO was granted a permit to build the Shoreham Nuclear Power Station ("Shoreham") within the County of Suffolk (the "County"). Construction of Shoreham is now essentially complete, at a cost of approximately $4 billion.

Relations between LILCO and the County concerning Shoreham began amicably. In 1970, the Suffolk County Executive, H. Lee Dennison, appeared before the Atomic Energy Commission in order to support LILCO's application for a construction permit. Complaint at par. 10. Following issuance of the construction permit the Suffolk County Department of Emergency Preparedness was directed to develop a response plan for major radiation incidents. In 1975, State, County and LILCO representatives began meeting to discuss emergency planning. On August 30, 1978 then County Executive John Klein approved a County "General Radiation Emergency Plan" which was later reviewed and accepted by the New York State office of disaster preparedness. Complaint at par. 13–14.

In 1979 there was an accident at the Three Mile Island nuclear power station. Following that event the Nuclear Regulatory Commission ("NRC") promulgated new emergency planning regulations. As a result of the new regulations, then County Executive Klein signed a "Memorandum of Understanding" outlining the new emergency responsibilities of LILCO and the County. By its terms, the "Memorandum of Understanding" could be terminated by either party on ten days notice. LILCO also began to seek outside consultants to assist in the new emergency planning. Complaint at par. 16–17.

On September 18, 1981 the County Legislature approved a contract whereby the County was to provide a "Radiological Emergency Response Plan" ("RERP") for LILCO so that the Shoreham facility would be able to comply with the new federal regulations. In return LILCO paid the County $150,000 initially and promised to pay an additional $95,000 in six months when the plan was to be completed. Complaint at par. 18.

In February of 1982 relations between LILCO and the County took a decided turn for the worse. The County Department of Planning informed LILCO that due to an apparent conflict of interests the County would return LILCO's initial payment of $150,000 for the preparation of a RERP. The County also maintained, however, that they would continue to develop a plan to protect the health, safety and welfare of the community. Complaint at par. 25.

The County later informed LILCO that it was pursuing this course of action because it was in an adversary relationship with LILCO regarding the licensing of Shoreham by the NRC. LILCO objected to the return of its payment and did not cash the check sent to it by the County. Complaint at par. 26.

On March 25, 1982 County Executive Cohalan approved a resolution of the County Legislature to continue preparation of an emergency plan at the County's expense. The resolution also provided that the final plan would have to be approved by the legislature. Complaint at par. 27.

Following the legislature's decision not to complete the original LILCO sponsored RERP, LILCO began to refine that work

which the County planners had begun and abandoned. On May 10, 1982 LILCO submitted this plan to the State Disaster Preparedness Commission for review. LILCO informed the Commission that the County did not endorse the submitted plan. Complaint at par. 46. Apparently in response to LILCO's actions in this regard, the County Legislature passed a resolution that the County's plan would not be complete until approved by the legislature after public hearings. Complaint at par. 32.

In December of 1982 the County produced a draft Suffolk County Radiological Emergency Response Plan (the "draft County plan"). LILCO contends that this plan was little more than a generic description of those areas which would have to be developed in any working emergency plan. Public hearings on the plan were held in January of 1983. Complaint at par. 35–37.

On February 17, 1983 the County Legislature passed a resolution rejecting the draft County plan and further stating that no emergency plan would be adopted or implemented by the County because no plan could protect the health, welfare and safety of County residents. The resolution also directed County Executive Cohalan to assure that actions taken by other government agencies were consistent with the County Legislature's determination. Complaint at par. 41.

The County then moved the NRC licensing board to terminate the Shoreham licensing proceeding on the basis of the County's decision not to participate in emergency planning. The board denied the County's motion. *Long Island Lighting Co.* (Shoreham Nuclear Power Station, Unit 1), 17 NRC 608, *affm'd,* 17 NRC 741 (1983).

It is LILCO's contention that the County's refusal to participate in emergency planning is the "centerpiece" of the County's attempt to prevent the operation of Shoreham. LILCO alleges that the County has endeavored to delay NRC licensing procedures by raising unrelated issues, with the result that the NRC record on Shoreham has exceeded 35,000 pages. Complaint at par. 44. The County has also instituted judicial proceedings against LILCO. Complaint at par. 55.

The latest emergency plan which LILCO has filed with the NRC provides for LILCO personnel to carry out those functions in which the County refuses to participate. The County contends that LILCO's plan is inadequate.

LILCO has not been denied a license because of the County's opposition. LILCO's complaint calls for the declaratory relief that, should the defendants succeed in preventing the operation of Shoreham, either through the denial of a license or through abandonment of the plant by LILCO, then the defendants will have effected an inverse condemnation of LILCO's property in violation of the fifth amendment.

LILCO also seeks a $4 billion judgment against the defendants on the ground that the County breached its contractual obligations to LILCO by refusing to develop a RERP and by obstructing LILCO from implementing a RERP. The contractual claim is apparently based on the court's pendent jurisdiction.

## DISCUSSION

As on any motion to dismiss, the court accepts all material factual allegations contained in the complaint as true and construes the complaint in favor of the plaintiff for the purpose of deciding the instant motion. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Oneida Indian Nation of New York v. State of New York,* 691 F.2d 1070, 1074 (2d Cir.1982). The major issue before the court at this juncture thus becomes whether declaratory relief may be granted for a governmental taking of plaintiffs' property even though plaintiffs' property has not as yet been taken and, depending on a somewhat complex series of future events, may never be taken.

The power of the federal courts is limited under Article III of the Constitution to appropriate cases and controversies. U.S. Const. art. III, § 2. It is fundamental that a United States District Court may not

render advisory opinions. *See, e.g., Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975); *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971); *Golden v. Zwickler,* 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969). A prayer for declaratory relief may properly be addressed by this court only if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Preiser,* 422 U.S. at 402, 95 S.Ct. at 2334 (quoting *Maryland Casualty Co. v. Pacific Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)) (emphasis in *Preiser* ).

 Under the Declaratory Judgment Act a court of the United States may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Such a declaration, however, may only be made "in a case of actual controversy." *Id.* A mere abstract question or hypothetical threat is not a sufficient basis for a declaratory judgment under the Act. *Golden,* 394 U.S. at 108, 89 S.Ct. at 959.

 The question of whether a particular case presents a hypothetical question or a substantial controversy is necessarily one of degree turning on the particular facts alleged in each case. There are, as plaintiff does not deny, a substantial number of factual contingencies in the complaint in this action. Plaintiff in effect asks this court to find that if the NRC should deny a license for the operation of Shoreham, and if any or all of the complained of actions of the defendants cause that denial, then defendants will have committed an unconstitutional taking of plaintiff's property. Given its dependence on future events that may or may not occur, plaintiff's action would appear to be premature.

 Whether a question is ripe for adjudication "turns on 'the fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.'" *Pacific Gas and Electric Co. v. State Energy Resources Conservation and Development Commission,* 461 U.S. 190, 103 S.Ct. 1713, 1720–21, 75 L.Ed.2d 752 (1983) (quoting *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967)). A comparison of the Supreme Court's determinations in the companion cases of *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), and *Toilet Goods Association v. Gardner,* 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967), provides a helpful illustration of the distinction between a ripe controversy and premature litigation.

In *Abbott Laboratories* thirty-seven individual drug manufacturers challenged a regulation requiring that labels and advertisements for prescription drugs contain the "established name" of the particular drug rather than just the proprietary name. 387 U.S. at 137–39, 87 S.Ct. at 1509–10. The issue involved in *Abbott Laboratories* was purely legal and both sides moved for summary judgment. *Id.* at 149, 87 S.Ct. at 1515. The challenged regulation had a direct effect on plaintiffs, forcing them to incur the immediate costs of complying or else risk prosecution. *Id.* at 152, 87 S.Ct. at 1517. Under these circumstances the Court found declaratory relief to be appropriate as the controversy presented was ripe for a judicial determination. *Id.* at 148–56, 87 S.Ct. at 1515–20.

In *Toilet Goods Association* a group of cosmetic distributors and manufacturers challenged a regulation requiring manufacturers to provide Food and Drug Administration employees free access to manufacturing facilities. Manufacturers who did not comply with the regulation faced possible immediate suspension of their certification. *Toilet Goods Association,* 387 U.S. at 158–61, 87 S.Ct. at 1520–23. Although the case presented a purely legal question, the court found that other factors rendered it inappropriate for judicial resolution. *Id.* at 163, 87 S.Ct. at 1524. The regulation only provided that free access *might* be

required and that certification *might* be suspended. Under these circumstances, the court found that a ripe controversy did not exist. *Id.* at 163–66, 87 S.Ct. at 1524–26.

The present action resembles *Toilet Goods Association* more closely than it resembles *Abbott Laboratories.* It may not be said, based on the allegations in the complaint, that the taking which plaintiff fears is an imminent or even probable event. Plaintiff merely asserts that the NRC might deny its license and that defendants' actions might be the cause of that denial.

Plaintiff bases much of its opposition to defendants' motion on *Ruckelshaus v. Monsanto Co.,* —— U.S. ——, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984). *Monsanto* concerned federal legislation authorizing the Environmental Protection Agency ("EPA") to publicly disclose data submitted to it by applicants for pesticide registration. Monsanto objected that such a disclosure would effect a taking of its property without just compensation by destroying valid trade secrets. *Id.* 104 S.Ct. at 2867–71. The Court, without explicitly addressing ripeness, held that "disclosure of data submitted by Monsanto to the agency prior to October 22, 1972, or after September 30, 1978, does not effect a taking.... EPA consideration of disclosure of health, safety and environmental data will constitute a taking if Monsanto submitted the data between October 22, 1972 and September 30, 1978." *Id.* 104 S.Ct. at 2879. Plaintiff contends that this holding indicates the Supreme Court's approval of declaratory judgments based on contingent circumstances.

Plaintiff's reliance on *Monsanto* is misplaced. The "if" in the Supreme Court's holding in *Monsanto* concerned a past event: if the data had been submitted during a certain time period, then any public disclosure of that information would constitute a taking. The "if" in this action, however, concerns a future possibility: if the NRC denies plaintiff's application due to defendants' actions, then defendants' ac-

tions may constitute a taking. A claim based on a speculation as to possible future occurrences is fundamentally different from the claim considered in *Monsanto.*

In addition, courts must use caution when considering declaratory judgments in cases involving constitutional issues or questions of public moment. *Public Affairs Press v. Rickover,* 369 U.S. 111, 112, 82 S.Ct. 580, 581, 71 L.Ed.2d 604 (1962); *Communist Party v. Control Board,* 367 U.S. 1, 71–72, 81 S.Ct. 1357, 1397–98, 6 L.Ed.2d 625 (1961). As the Supreme Court has cautioned,

> judicial exposition upon political proposals is permissible only when necessary to decide definite issues between litigants.... Should the courts seek to expand their power so as to bring under their jurisdiction ill-defined controversies over constitutional issues, they would become the organ of political theories. Such abuse of judicial power would properly meet rebuke and restriction from other branches.

*United Public Workers v. Mitchell,* 330 U.S. 75, 90–91, 67 S.Ct. 556, 565, 91 L.Ed. 754 (1947).

■ In summary, it is the finding of this court that plaintiff's complaint does not present a controversy presently ripe for judicial review. Plaintiff's claim would require the court to make a decision based on the uncertain occurrence of a future event. *See Kidwell Ex Rel. Penfold v. Meikle,* 597 F.2d 1273, 1289 (9th Cir.1979). Accordingly, plaintiff's fifth amendment claim for declaratory relief is dismissed.

■ Turning to plaintiff's breach of contract claim, that claim is apparently based on this court's pendent jurisdiction. Considering the dismissal of plaintiff's federal constitutional claim, plaintiff's state law contract claim should be dismissed as well. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Nolan v. Meyer,* 520 F.2d 1276, 1280 (2d Cir.), *cert. denied,* 423 U.S. 1034, 96 S.Ct. 567, 46 L.Ed.2d 408 (1975).

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss pursuant to F.R. Civ.P. 12(b)(1) and 12(b)(6) is granted. The clerk is directed to enter judgment accordingly.

SO ORDERED.